Michael G. Bongiorno (*pro hac vice*)
michael.bongiorno@wilmerhale.com
WILMER CUTLER PICKERING HALE
  AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 937-7220
Facsimile: (212) 937-7300

Peter J. Kolovos (*pro hac vice*)
peter.kolovos@wilmerhale.com
WILMER CUTLER PICKERING HALE
  AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6493
Facsimile: (617) 526-5000

Chris Johnstone (SBN 242152)
chris.johnstone@wilmerhale.com
WILMER CUTLER PICKERING HALE
  AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6147
Facsimile: (650) 858-6100

*Attorneys for Plaintiffs*
VNK MANAGEMENT, LLC, and
VINOD KHOSLA

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| VNK MANAGEMENT, LLC and VINOD KHOSLA<br><br>Plaintiffs,<br><br>v.<br><br>JEFFREY PARKER,<br><br>Defendant. | Case No. 5:20-cv-04799-SVK<br><br>**PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**NATURE OF THE ACTION**

1. This is an action for fraudulent concealment and breach of fiduciary duty against Defendant Jeffrey Parker ("Defendant" or "Parker"). Plaintiffs VNK Management, LLC ("VNK") and Vinod Khosla (collectively "Plaintiffs") bring the breach of fiduciary duty cause of action as an equity holder and creditor of non-party Soraa, Inc. ("Soraa" or the "Company").

2. Defendant devised and implemented a scheme fraudulently to induce Plaintiffs to invest millions of dollars into the Company while secretly planning to leave the Company as soon as Plaintiffs had committed their additional funding to the Company. In particular, in November 2018, while Defendant was Chief Executive Officer and a member of the Company's board of directors, he met with Mr. Khosla multiple times and convinced Plaintiffs to invest $7 million dollars into the Company, a sum that was in addition to Plaintiffs' previously completed substantial investment. During these meetings, Parker set a trap for Plaintiffs by misrepresenting his plans and intentionally concealing that he was planning to leave the Company imminently. Once he had convinced Plaintiffs to invest an additional $7 million in the Company, Defendant summarily announced his intentions to depart the Company. While Defendant promised to stay at Soraa until at least the end of January 2019, he moved to the Midwest United States in early December 2018. As a result of Defendant's actions, which left Soraa in disarray, Plaintiffs had no choice but to invest additional funds into the Company after Defendant's departure to protect their previous investments.

3. By the causes of action asserted herein, Plaintiffs seek monetary damages, including punitive damages, for the wrongful acts of Defendant. Plaintiffs also seek recovery of all their costs incurred in bringing and prosecuting this suit, including their attorneys' fees.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction because the matter in controversy exceeds the sum or value of $75,000.

5. Venue and jurisdiction are proper in this Court as the tortious conduct at issue took place, and the resulting harm was incurred, in California, including principally in the

County of Santa Clara, State of California.  Defendant removed this case to federal court based on diversity jurisdiction on July 17, 2020.

**PARTIES**

6. Plaintiff VNK Management, LLC is a Delaware limited liability company with its principal place of business in California.  VNK is indirectly wholly owned and controlled by Vinod Khosla.  As a result, any rights held by VNK are also held by Mr. Khosla.  And any economic loss to VNK is also sustained by Mr. Khosla.

7. Plaintiff Vinod Khosla is an individual residing in California.

8. Plaintiffs are informed and believe, and on that basis allege, that Defendant Jeffrey Parker is an individual previously residing in California.  On information and belief, during the time of the wrongful acts alleged herein, and at least through the end of November 2018, Defendant resided in the County of Santa Clara, State of California.

9. Non-party Soraa, Inc., a Delaware corporation, is a private, venture backed company that manufactures full spectrum color rendering LED lights.  Defendant joined Soraa as CEO and a member of the Board of Directors in 2013.  Both Plaintiffs, either directly or indirectly through one or more investment vehicles, have been investors in Soraa since 2010 and as of today own a majority of Soraa.

10. Non-party Khosla Ventures operates a series of venture capital investment funds in which Mr. Khosla has personally invested and has ownership interest and which are managed by Mr. Khosla; several of these funds were investors and stockholders in Soraa.  As a result, any rights held by Khosla Ventures were also held by Vinod Khosla.

**GENERAL FACTUAL ALLEGATIONS**

11. Defendant was CEO of Soraa and a member of the Company's board of directors since 2013.  Over the years, Defendant cultivated deep, significant business and commercial relationships in the lighting business for Soraa.

12. At all times during Defendant's tenure with Soraa, the Company operated its business at a significant deficit—revenues generated from operations were not sufficient to pay

the Company's operating expenses. As a result, Soraa was reliant on outside investment to meet its cashflow needs and to support its operations and business. This shortfall of operating cash was provided by a number of investors during this period of time, including funds from Plaintiffs and other investment funds affiliated with Plaintiffs (including Khosla Ventures).

13. In November 2018, Soraa was in need of another $7 million of working capital to meet its ongoing cash needs. Defendant met with numerous investors in an attempt to secure additional funding for Soraa's business, including Vinod Khosla. Several telephone meetings and in-person meetings at Khosla Ventures' offices were held between Defendant and Vinod Khosla in November 2018, including a meeting at Khosla Ventures' offices on November 7, 2018.

14. The purpose of these meetings with Mr. Khosla was for Defendant to prepare and present a specific cash and operating plan to Plaintiffs for the operations of Soraa's business going forward, a plan that Parker represented during his meetings with Mr. Khosla was achievable and would put Soraa on a path to profitability using the $7 million requested. The cash and operating plan illustrated how Parker planned to use the $7 million investment for Soraa's operations to put the Company on a path to profitability. A viable, executable cash and operating plan that made Soraa profitable following the requested $7 million investment was integral to Plaintiffs in deciding whether to invest, as there was little desire to continue to provide funding to an unprofitable company with no achievable aim of profitability in sight. During the course of these several telephonic and in-person meetings in November 2018, Defendant presented, revised and refined a cash and operating plan for Soraa that would achieve this outcome.

15. As part of Defendant's cash and operating plan presented to Plaintiffs, Defendant assured Plaintiffs that Defendant was able to deliver on this promise—namely, that with the additional $7 million requested, Defendant as CEO of Soraa would bring Soraa to profitability. Plaintiffs viewed Defendant's ongoing efforts as CEO of Soraa to be essential and crucial to Soraa achieving its plan to profitability.

16. Based upon Defendant's express assurance that he would achieve the plan that he presented to Plaintiffs, and that he would personally execute it, Plaintiff VNK invested $7 million in Soraa in the form of a debt instrument dated November 8, 2018 (the "Promissory Note"). Essential to Plaintiffs' decision to make this substantial investment was their understanding, based on Defendant's representations, that Defendant would deliver on the profitability plan that he presented to Plaintiffs. Indeed, soon after VNK made this investment, Mr. Khosla checked in with Defendant on the status of the plan, which included telephone calls on November 19, 2018 and November 28, 2018.

17. Although VNK is the party to the Promissory Note, Mr. Khosla had an interest in the transaction by virtue of his ownership stake in VNK. Thus, any economic loss suffered by VNK through the Promissory Note was also sustained by Mr. Khosla.

18. On information and belief, almost immediately after securing this investment from Plaintiffs, Defendant negotiated with Luminii, LLC to join as its CEO and leave Soraa, in direct contravention to his assurance to Plaintiffs that he would work to execute on the investment plan that he presented. On approximately November 29, 2018, Defendant informed Plaintiffs that he was resigning as CEO of Soraa to take the job as CEO of Luminii, LLC.

19. Defendant's sudden resignation left Soraa in disarray and jeopardized the future of the Company. Gone was the promise to deliver on the plan that Defendant presented to Plaintiffs at the time of investment just 20 days previous. With Defendant gone, there was a leadership vacuum at the Company, nobody to follow through on the execution of putting Plaintiffs' funds to their intended uses to achieve profitability. Plaintiffs sought to obtain Defendant's agreement to remain with Soraa as CEO, to deliver on the promises as outlined in his plan, which he refused. However, Defendant did agree, pursuant to a letter agreement with Khosla Ventures (in which Mr. Khosla has ownership interest and is manager, which was a significant stockholder in Soraa, and which had a direct, economic interest in seeing the Company succeed and achieve a positive investment outcome) dated November 30, 2018, to remain on as CEO of Soraa until the end of January 2019 to affect an orderly transition for

Soraa.  This was critical, as without a transition plan, there was real risk of total loss of shareholder value in the Company.  Plaintiffs at this point had little hope that a replacement would be able to execute on the achievement of Defendant's plan, but they were looking to salvage what little continuity and value were possible with an orderly transition to new Company leadership.  Notwithstanding his promise, on information and belief, Defendant essentially up and moved to the Midwest United States to start his new job in early December 2018, offering no meaningful help or transition to Soraa.

20.  Defendant's wrongful conduct left Plaintiffs in an impossible position.  Plaintiffs had invested another $7 million into Soraa based on Defendant's express promise to use those funds to execute an agreed upon plan that was created and presented by Parker himself that would put the Company on the path to profitability.  Had Defendant disclosed to Plaintiffs his true intentions in November 2018, Plaintiffs would have considered a different course of action with respect to their potential investment in Soraa.  Instead, Defendant's conduct left Soraa in perilous condition because it had lost its CEO who promised to deliver on profitability.  To protect their investment and to keep Soraa from going out of business (which would result in a total loss of value for all shareholders), Plaintiff VNK was required to invest more than $24 million in additional funds in the Company.  This aggregate amount was funded over a number of dates to meet Soraa's cashflow shortfalls in the form of additional debt instruments on: December 26, 2018, May 4, 2019, May 21, 2019, July 8, 2019, July 31, 2019, September 23, 2019, December 31, 2019, January 23, 2020 and February 14, 2020.  Ultimately, the assets related to the operating business of Soraa were sold to a third party in March 2020 in a non-cash acquisition at a significant loss for all Soraa investors and shareholders, with most shareholders and investors suffering a total loss of their investment, and Plaintiffs losing most of the $31 million they had invested in the Company since November 2018.

## FIRST CAUSE OF ACTION
## FRAUDULENT CONCEALMENT

21. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1-20 of this Complaint, and incorporate them herein.

22. In soliciting Plaintiffs to make a $7 million investment in the Company in November 2018, Parker concealed certain material facts that Parker had a duty to disclose and that Plaintiffs could not have reasonably discovered, including but not limited to the fact that Parker was not planning on personally executing on a plan to guide the Company to profitability, instead planning to leave the Company and move to the Midwest United States to take a new job nearly immediately after securing Plaintiffs' $7 million investment, and that Parker would not offer any meaningful help or transition to Soraa before he left for another job. By concealing these and other facts, Parker intended to deceive Plaintiffs.

23. Plaintiffs relied upon Parker not to conceal material facts, and such reliance was reasonable and justifiable under the circumstances.

24. Parker's concealments were a substantial factor in causing damage to Plaintiffs. As a proximate result of the fraudulent concealments alleged, Plaintiffs have been generally damaged in an amount to be proven at trial, including but not limited to the loss of most of the $31 million that Plaintiffs invested in the Company after November 2018.

25. On information and belief, Parker's conduct was fraudulent, willful and malicious insofar as he concealed these and other material facts in direct breach of his fiduciary duties. Given the willfulness of Parker's conduct, Plaintiffs are entitled to exemplary and punitive damages.

## SECOND CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY

26. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1-25 of this Complaint, and incorporate them herein.

27. By reason of his position as a director and officer of the Company, Defendant owed the Company's stockholders and creditors fiduciary obligations.

28. As of the time of the wrongful conduct alleged herein, Parker was the Chief Executive Officer of the Company, and as such he owed a fiduciary duty to the Company's stockholders, including Plaintiffs. As Plaintiffs' fiduciary, Parker owed the utmost duty of candor, among other duties, which is a duty to exhibit complete truthfulness and disclose any and all material facts within his knowledge of which Plaintiffs were ignorant.

29. Parker breached that fiduciary duty when he concealed that he was not planning on personally executing on a plan to guide the Company to profitability, instead planning to leave the Company nearly immediately after securing Plaintiffs' $7 million investment. On information and belief, Parker's concealment of this and other material facts was intended to fraudulently induce Plaintiffs to committing to invest millions of dollars in the Company, which Plaintiffs would not have committed were they to have knowledge of Parker's true intentions to abandon the Company.

30. As a proximate result of Parker's breaches of his fiduciary duties, Plaintiffs have suffered actual damages in amounts to be proven at trial, including but not limited to the loss of most of the $31 million that Plaintiffs invested in the Company after November 2018.

31. On information and belief, Parker's conduct was fraudulent, willful and malicious insofar as he intentionally concealed these and other material facts in direct breach of his fiduciary duties. Given the willfulness of Parker's conduct, Plaintiffs are entitled to exemplary and punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

1. That the Court enter judgment in favor of Plaintiffs and against Defendant on all counts alleged herein;

2. For compensatory damages in an amount to be proven at trial;

3. For punitive damages in an amount appropriate to punish Defendant and to make an example of him to the community;

4. For all attorneys' fees and costs incurred by Plaintiffs in bringing and prosecuting this action; and

5. For such other and further relief as the Court may deem just, proper and appropriate.

Dated: November 23, 2020                          By:    /s/ Peter J. Kolovos

                                                        WILMER CUTLER PICKERING
                                                         HALE AND DORR LLP

                                                        Peter J. Kolovos (SBN 632984)
                                                        peter.kolovos@wilmerhale.com
                                                        60 State Street
                                                        Boston, MA 02109
                                                        Telephone: (617) 526-6493
                                                        Facsimile: (617) 526-5000
                                                        *Attorneys for Plaintiffs*

                                                        VNK MANAGEMENT, LLC, and
                                                        VINOD KHOSLA

*Of Counsel*

| Michael G. Bongiorno (SBN 4347316) | Nicholas G. Purcell (SBN 313632) |
| michael.bongiorno@wilmerhale.com | nick.purcell@wilmerhale.com |
| 7 World Trade Center | 350 South Grand Avenue, Suite 2400 |
| 250 Greenwich Street | Los Angeles, CA 90071 |
| New York, New York 10007 | Telephone: (213) 443-5300 |
| Telephone: (212) 937-7220 | Facsimile: (213) 443-5400 |
| Facsimile: (212) 937-7300 | |

Chris Johnstone (SBN 242152)
chris.johnstone@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6147
Facsimile: (650) 858-6100